IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**AMBER S.,**[1]

                             Plaintiff,                      Civ. No. 6:20-cv-00450-JR

    v.                                                         **OPINION AND ORDER**

**ANDREW SAUL**, Acting
Commissioner of Social Security

                             Defendant.

_____

**RUSSO, Magistrate Judge:**

      Plaintiff Amber S. ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying continuing Disability Insurance Benefits (DIB) under Title II of the Social Security Act ("the Act") after March 1, 2017. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons articulated below, the Commissioner's final decision is reversed.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

Page 1 – OPINION AND ORDER

## BACKGROUND

Plaintiff filed for DIB on July 2, 2014, alleging disability as of August 3, 2012. Tr. 143. Her claims were denied initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge (ALJ). Tr. 143. On November 3, 2016, Plaintiff appeared and testified before ALJ B. Hobbs. On December 21, 2016, ALJ Hobbs issued a decision finding Plaintiff not disabled. Tr. 159.

On May 29, 2019, Plaintiff successfully appealed the Agency's finding of nondisability in the District Court of Oregon. In Judge Hernandez's remand order, he explained that a remand to the ALJ was appropriate because "the record is not adequately developed in this case as to the extent and severity of Plaintiff's pain and the impact of that pain on her ability to work." Amber M. S. v. Soc. Sec. Admin., No. 6:18-cv-427-HZ, 2019 WL 2287734 (D. Or. May 27, 2019).

On remand, the ALJ found Plaintiff was under a disability from August 3, 2012 through March 1, 2017. Tr. 765-82. The ALJ, however, found that medical improvement occurred as of March 2, 2017, and therefore determined that Plaintiff's disability ended on that date. Tr. 747, 776-81, 801-02, 1091, 1098-1100, 1177-81. This appeal followed.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, a court reviews the administrative

record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. Davis v. Heckler, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. See 20 C.F.R. § 404.920(a)(4). The burden of proof rests upon the claimant at steps one through four, and with the Commissioner at step five. Id.; Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner must demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is disabled. Id. If, however, the Commissioner proves that the claimant can perform other work existing in significant numbers in the national economy, the claimant is not disabled. Id.; see also Bustamante, 262 F.3d at 953–54.

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had not performed substantial gainful activity since her alleged onset date of August 3, 2012. Tr. 770. At step two, the ALJ found that from August 3, 2012 through March 1, 2017, Plaintiff had the severe impairments of status post lumbar fuion and post laminectomy syndrome with opioid dependence; depressive disorder; generalized anxiety disorder; and somatic symptom disorder. Tr. 770.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled any listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 from August 3, 2012 through March 1, 2017. Tr. 771. The ALJ next assessed Plaintiff's RFC and

determined that, from August 3, 2012 through March 1, 2017, she retained the capacity to perform sedentary work with the following limitations:

> She could occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs. She could never climb ladders, ropes and scaffolds. She could never reach overhead with the bilateral upper extremities and never operate pedals with the lower extremities bilaterally. She required the ability to sit or stand at will while remaining on task. [She] could have no exposure to hazards such as machinery and unprotected heights. [Plaintiff] could apply commonsense understanding to carry out short and simple written or oral instructions, consistent with level 2 reasoning that can be learned in 30 days or less. She would have been expected to be absent more than three days per month.

Tr. 772.

At step four, the ALJ determined that Plaintiff was unable to perform any of her past relevant work between August 3, 2012 and March 1, 2017. Tr. 775. The ALJ then determined that Plaintiff was disabled from August 3, 2012 through March 1, 2017. Tr. 776.

The ALJ then evaluated Plaintiff's claim of disability from the period beginning March 2, 2017, through the date of the decision. Tr. 776. At step two, the ALJ determined that Plaintiff had not developed any new impairments since March 2, 2017. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a Listed impairment. The ALJ concluded that medical improvement occurred as of March 2, 2017, the date Plaintiff's disability ended. Tr. 777.

The ALJ then assessed Plaintiff's RFC beginning on March 2, 2017, and found that she was able to perform less than the full range of light exertion work with the following limitations: she can lift, carry, push, and pull up to 15 pounds occasionally and up to 10 pounds frequently; she can occasionally balance, stoop, crouch, kneel, crawl, and climb ramps and stairs; she can never reach overhead with the bilateral upper extremities and never operate pedals bilaterally; she can have no exposure to hazards such as machinery and unprotected heights; and she can apply

commonsense understanding to carry out short and simple written or oral instructions, consistent with level 2 reasoning. Tr. 777.

The ALJ next found at step four that Plaintiff was unable to perform any of her past relevant work but determined that there were jobs in the national economy that Plaintiff could perform, including counter clerk, office helper, and addresser. Tr. 781. The ALJ also found that even if Plaintiff were limited to sedentary work, she would be able to perform the jobs of bench assembler and eyeglass polisher. The ALJ therefore concluded that Plaintiff was not under a disability as of March 2, 2017, through the date of the decision.

Plaintiff contends the Commissioner erred by (I) finding medical improvement occurred after March 1, 2017; (II) improperly evaluating the medical evidence; (III) rejecting Plaintiff's subjective symptom testimony; and (IV) rejecting the lay witness testimony.

I.  **Medical Improvement After March 1, 2017**

The central issue in this case is whether the ALJ erred in finding that Plaintiff had medically improved as of March 2, 2017 and was no longer disabled. A claimant is no longer disabled when substantial evidence shows "(1) there has been any medical improvement in the [claimant'] impairment and (2) the claimant is now able to engage in substantial gainful activity." Attmore v. Colvin, 827 F.3d 872, 873 (9th Cir. 2016). Medical improvement occurs when there is any decrease in the severity of the claimant's impairments that were present at the time of the most recent favorable disability decision, also known as the comparison point decision. 20 C.F.R. § 416.994(b)(1). To make this determination, the ALJ compares the prior and current medical evidence to see if there has been improvement in the claimant's signs, symptoms, or laboratory findings. Id. at (b)(2)(i).

Here, the ALJ found that Plaintiff's impairments medically improved after March 1, 2017 to the point that she could engage in full-time work. Tr. 770-82. To support this conclusion, the ALJ first noted that Plaintiff had not developed any new impairments since March 2, 2017. She then credited the medical opinions of Arnold Ostrow, M.D., and consultative examiner Derek Leinenbach, M.D., who each opined in 2019 that Plaintiff was capable of performing light exertional work. Tr. 777, 779, 798-801, 1172-84.

The ALJ's conclusion from these medical opinions that medical improvement occurred is not supported by the record. First, Dr. Ostrow opined that Plaintiff could perform light work during the entire period at issue, so his testimony is not evidence of improvement as of March 2017. Second, Dr. Leinenbach's opinion, rendered in August 2019, was not consistent with the weight of the medical record. Treating nurse Katheryn Kernan, FNP, as discussed below, opined that Plaintiff would not be capable of sustaining substantial gainful activity because of her chronic pain and limitations. Because the ALJ failed to properly resolve this conflict in the medical record, it was not reasonable for the ALJ to rely upon Dr. Leinenbach's opinion as evidence of medical improvement.

As further justification for her finding that Plaintiff's medical condition improved after March 2017, the ALJ found that her symptoms improved using only conservative treatment. Tr. 777, 1090-91, 1106-41, 1205-17. A treatment's effectiveness is relevant to determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv), (v). Here, the ALJ contends that Plaintiff told treating sources that her symptoms had improved. Tr. 778, 1049-53, 1090-91. For example, Plaintiff was able to cease taking Fentanyl while "retaining significant improvement." Tr. 778, 1125-28, 1138-40, 1206-17. However, Plaintiff's cessation of Fentanyl was replaced with increased doses of Percocet around May 2017. Tr. 777. A treatment note from

February 27, 2017 reveals that Plaintiff's "pain [was] becoming so debilitating that she is requiring large doses of Fentanyl and Percocet [and] Flexeril and is sleeping about 16 hours a day." Tr. 1094. On March 6, 2017, Nurse Kernan found that Plaintiff's pain, despite using Fentanyl, remained an 8 out of 10 on the pain intensity scale. Tr. 1090-91.

The ALJ also found that Plaintiff was able to be consistently more active with exercise and social activities and reasoned that this showed medical improvement. To support this contention, however, the ALJ cited chart notes from February and May 2016, about a year prior to the date the ALJ found Plaintiff no longer disabled. Tr. 734-36, 778. These activities show that, even while conclusively disabled, Plaintiff was capable of performing some activities despite her severe limitations; they do not constitute evidence of medical improvement after March 2017.

The ALJ also found that Plaintiff reported sustained improvements in functioning after March 1, 2017. The ALJ, however, does not identify any specific functioning that improved over the course of the relevant period. The ALJ's contention that objective findings after March 1, 2017 were largely limited to lumbar range of motion is at odds with multiple treatment notes after that date indicating that Plaintiff's gait was slow, stiff, irregular, and very restricted; that she had pain with motion upon flexion, and pain radiating beyond her back; and that Plaintiff was "unable to tolerate sitting or standing for periods of time and in fact can only sit in the exam chair for a few minutes." Tr. 1091, 1112, 1133, 1177, 1189-91. It was not reasonable to conclude from this record that Plaintiff sustained significant improvements in functioning after March 2017.

In sum, the ALJ's finding of medical improvement as of March 2, 2017 was not supported by substantial evidence in the record.

**II.     Medical Opinion Evidence**

Plaintiff next argues that the ALJ improperly rejected the opinions of chiropractor Shane Gofourth, D.C., and treating nurse Katheryn Kernan, FNP. "There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" Id. (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Id. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Id. at 1012-13 (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)).

Dr. Gofourth was Plaintiff's treating chiropractor. Dr. Gofourth opined that Plaintiff would miss two to three days of work each week due to a flare up of her chronic back and neck pain. Tr. 779, 1148. The ALJ gave little weight to this opinion, noting that Dr. Gofourth did not offer

evidence to support his opinion other than noting Plaintiff experienced pain and spasms. The ALJ may reject an opinion that is brief, conclusory, and inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Here, in the absence of clinical findings to support Dr. Gofourth's limitation that Plaintiff would be incapacitated two to three days per week, the ALJ reasonably found that Plaintiff's pain and spasms are not preclusive of substantial gainful activities. Tr. 779. The ALJ therefore rejected Dr. Gofourth's extreme limitation and provided a legally sufficient justification for doing so. Thomas, 278 F.3d at 957.

Plaintiff next contests the ALJ's rejection of Nurse Kernan's opinion. Ms. Kernan opined that Plaintiff could not work and would miss more than two days of work per month due to her medical conditions. Tr. 779, 1219. The ALJ rejected this opinion, stating that it was conclusory and inconsistent with objective findings in the medical record. Inconsistency with the medical record is a legally sufficient reason to reject a medical opinion. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, the Commissioner argues that Ms. Kernan's opinion conflicted with the record evidence that Plaintiff's condition greatly improved over time. However, as discussed above, the overwhelming evidence of record suggests that Plaintiff's pain and limitations continued relatively unabated over the period at issue, and extensive treatment notes support Ms. Kernan's opinion. On this record, the ALJ's rejection of Ms. Kernan's opinion is not supported by substantial evidence. Bayliss, 427 F.3d at 1218.

### III. Subjective Symptom Testimony

Plaintiff next argues that the ALJ improperly rejected her subjective symptom testimony. At the administrative hearing, Plaintiff testified that she was entirely incapable of working due to her severe chronic back pain and spasms.

The ALJ is required to provide specific, clear and convincing reasons for rejecting a claimant's testimony. Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). Here, the ALJ rejected Plaintiff's testimony to the extent it conflicted with the second RFC and provided legally sufficient reasons for doing so. Tr. 776-80. For example, the ALJ noted Plaintiff's conditions improved with treatment and were managed with conservative treatments like acupuncture. Tr. 778-80. A claimant's amount of treatment is an important indicator of the intensity and persistence of the claimant's symptoms, and evidence of conservative treatment is "sufficient to discount a claimant's testimony regarding the severity of an impairment." Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007); 20 C.F.R. § 404.1529(c)(3). Here, the Commissioner argues that Plaintiff's symptoms notably improved using acupuncture and that she reduced her use of medications, reported sustained improvements in functioning with ongoing conservative treatment, and was encouraged to engage in physical activity. Tr. 777, 1090-91, 1106-41, 1205-17. As discussed above, however, the record contradicts the ALJ's allegation of conservative treatment and functional improvement after March 2, 2017. Further, in her rejection of Plaintiff's testimony, the ALJ cited to physical activities that occurred during Plaintiff's period of adjudicated disability. On this record, the ALJ's rejection of Plaintiff's subjective symptom testimony based on functional improvement and conservative treatment was not supported by substantial evidence. 20 C.F.R. § 404.1529(c)(3).

**IV.    Lay Witness Testimony**

Plaintiff next contends that the ALJ improperly rejected the lay testimony of her husband, Lars S. Mr. S. indicated that Plaintiff had difficulty with travel and was unable to engage in hunting, fishing, and equestrian activities as she previously did. Tr. 391-98, 445, 449-60, 464-65. He also testified that Plaintiff was unable to complete household chores and needed help with

transfers and bathing. Mr. S. further testified that Plaintiff lays down and ices her back throughout the day. Tr. 392-93, 885.

The ALJ rejected this testimony. The ALJ may discount a lay witness opinion if she provides germane reasons for doing so. Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Here, part of Mr. S.'s testimony was contradicted by Plaintiff's statement and presentation during consultative examination with Dr. Leinenbach, where she averred that she is able to bathe independently and occasionally drives and runs errands by herself. Tr. 1176. Conflict with the medical evidence is a germane reason to reject a lay witness's testimony. However, this conflict does not support a wholesale rejection of the lay testimony that Plaintiff reclines and ices her back throughout the day. Significantly, Plaintiff's husband spends about six hours with her on workdays and usually the entire day on weekends and is thus a probative source of evidence about Plaintiff's conditions and limitations. The ALJ failed to provide any germane reason for rejecting Mr. S.'s testimony regarding Plaintiff's need to recline throughout the day. She therefore erred in rejecting the entirety of Mr. S.'s testimony. Dale, 823 F.3d at 943.

## REMAND

Here, the ALJ's comparison point decision that medical improvement occurred after March 1, 2017 was not based upon substantial evidence. 20 C.F.R. § 416.994(b)(1). Further, under the credit-as-true analysis articulated in Garrison v. Colvin, remand for further proceedings is not appropriate because no outstanding issues remain which must be addressed before a finding of disability can be made when the erroneously rejected evidence is credited as true. 759 F.3d 995, 1022 (9th Cir. 2014). The opinions of Nurse Kernan, Plaintiff, and Plaintiff's husband, when credited as true, support a finding of continued disability after March 2, 2017. Remand for the immediate payment of benefits is therefore appropriate on this record.

## **CONCLUSION**

For the reasons stated above, the Commissioner's final decision is REVERSED and REMANDED for the immediate payment of benefits, under sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 10th day of March, 2021.

                                            /s/ Jolie A. Russo
                                              Jolie A. Russo
                                     United States Magistrate Judge